**Below is the Order of the Court.**



**Christopher M. Alston**
**U.S. Bankruptcy Judge**
**(Dated as of Entered on Docket date above)**

Christopher M. Alston
Bankruptcy Judge
United States Courthouse
700 Stewart Street, Suite 6301
Seattle, WA 98101
206-370-5330

IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| In re: | Chapter 7 |
| Bogdan Maksimchuk and Nadezhda Maksimchuk, | Case No.  23-10885-CMA |
| Debtors. | |
| NWBF LLC, a Washington limited liability company *fka* Isola Financial LLC *dba* Northwest Builders Finance, | Adv. No.  23-01083-CMA |
| Plaintiff, | MEMORANDUM DECISION AND ORDER |
| v. | |
| Bogdan Maksimchuk and Nadezdha Maksimchuk, | |
| Defendants. | |

The Court conducted a bench trial in this adversary proceeding on February 7, 10, 11, 12, and 14, 2025. Danial D. Pharris and Paul J. Spadafora represented NWBF, LLC (the "Plaintiff" or "NWBF"). James E. Dickmeyer represented Bogdan Maksimchuk and Nadezdha Maksimchuk (together "Defendants"). The Court heard closing arguments on February 14, 2025, and then took the matter under advisement.

At trial, the Plaintiff asserted the Defendants omitted assets and transfers from their schedules, failed to maintain adequate records to ascertain their financial condition, and willfully and maliciously injured the Plaintiff. The Defendants argued that transfers made to their entities are not property of the estate, and that they maintained and provided adequate records pertaining to their financial condition.

For the reasons stated below, the Court finds and concludes Ms. Maksimchuk transferred property post-petition with intent to hinder, delay, or defraud creditors, and knowingly and fraudulently made a false oath about the Defendants' interest in certain real property. The Court will enter judgment against Ms. Maksimchuk denying her a discharge under 11 U.S.C. §§ 727(a)(2)(B) and (a)(4)(A).[1]

Further, the Court finds and concludes Mr. Maksimchuk knowingly and fraudulently made a false oath about Defendants' interest in certain real property. The Court will enter judgment against Mr. Maksimchuk denying him a discharge under 11 U.S.C. § 727(a)(4)(A).

---

[1] In addition to the foregoing, any and all findings of fact and conclusions of law orally set forth on the record at the time of the trial are hereby adopted and incorporated herein pursuant to Fed. R. Civ. P. 52(a) and Fed. R. Bankr. P. 7052.

Memorandum Decision and Order - 2

## I. FINDINGS OF FACT

### A. The Defendants' Real Estate Development Business.

The Defendants have been involved in real estate development for 15 years. In 2012, the Defendants formed Barcelo Homes, LLC ("Barcelo"), which builds townhomes, single family residences, and constructs condominiums and apartment complexes. Pretrial Order at ECF No. 81 ("PTO") ¶ 3. The Defendants have 100% ownership interest in Barcelo, Premium Homes of Mercer Island, LLC ("PHMI"), Columbia City Living, LLC ("Columbia City"), and Veromanagement, LLC ("Veromanagement"). Case No. 23-10885-CMA, ECF No. 21 and 138. The Defendants also own 92% of the interests in Caesar's Luxury Apartments ("Caesars"), 91% in Sorento on Yesler Owner, LLC ("Sorento on Yesler"), and 50% in Rise Flats, LLC ("Rise Flats"). *Id.*

### B. The Defendants Default on a Construction Loan from the Plaintiff.

The Defendants financed the Felix Flats Apartment construction project through the Plaintiff and personally guaranteed the obligation. The Defendants sold the Felix Flats complex in December 2021. Due to the Defendants' default on the construction loan, on March 1, 2023, the Plaintiff obtained an order from King County Superior Court placing a charging order lien against the Defendants' financial interests in all their entities. PTO ¶ 8, Ex. P18.

On March 24, 2023, the Plaintiff and the Defendants entered into a forbearance agreement. PTO ¶ 10, Ex. P21. Subsequently, the Defendants hired Todd Tracy of The Tracy Law Group. On April 17, 2023, Mr. Tracy sent the Plaintiff's lawyers an e-mail that provided answers to financial questions posed by the Plaintiff's lawyers. PTO ¶ 12, Ex. P29. In response to the second question regarding a certain piece of real property, Mr. Tracy wrote:

This property was purchased by Radimir and Ella Mandzyuk. Because they could not qualify on their own for the loan, the lender required that Bogdan be a co-borrower. Aleksander Deyneka is a cousin and works for the company and he also was a co-borrower. The bank required that they be listed on title so when the property was purchased…**When the property was sold, the funds were used by Radimir and Ella to purchase a new house.** The property was never owned by Premium Homes.

Ex. P29-3 (emphasis added).

This email was the precursor to a series of false oaths and accounts the Defendants would make in their bankruptcy case about the property at 4719 90th Ave. NE, Mercer Island, WA 98040 (the "Mercer Island Property"). At trial, the evidence demonstrated Radimir and Ella Mandzyuk did not receive any of the funds—rather, the Defendants received and distributed the sale proceeds.

### C.     The Defendants File for Bankruptcy.

The forbearance agreement expired by its terms on April 14, 2023. PTO ¶ 13. On May 15, 2023, the Defendants filed a voluntary Chapter 11 Subchapter V Petition under Case No. 23-10885-CMA. The List of Creditors Who Have the 20 Largest Unsecured Claims included the Plaintiff with a description of the claim as "Business debt Judgment Entered 1/9/2023, Charging Orders entered 3/1/2023." On May 30, 2023, the Defendants filed their Chapter 11 bankruptcy schedules ("Schedules") and statement of financial affairs ("SOFA") (collectively the "Initial Bankruptcy Documents").

A few weeks later, the U.S. Trustee conducted the initial meeting of creditors in the Chapter 11 case (the "Chapter 11 Creditors Meeting"). PTO ¶ 20. At the Chapter 11 Creditors Meeting each Defendant testified he/she read and signed the Initial Bankruptcy Documents, the information provided is true and correct, and that all assets and debts are listed.

Subsequently, the Plaintiff filed an objection to the Defendants' status as a Subchapter V Small Business. Case No. 23-10885-CMA, ECF No. 91. No one responded to the objection, and

the Court entered an order removing the Subchapter V designation. Case No. 23-10885-CMA, ECF No. 112. The Plaintiff also filed a motion to convert or dismiss the Defendants' Chapter 11 case for failure to file reports required by Bankruptcy Rule 2015.3. Case No. 23-10885-CMA, ECF No. 98. Again, neither the Defendants nor any party in interest filed any opposition to the Plaintiff's motion to convert or dismiss. At the scheduled hearing, the Court issued an oral ruling granting the Plaintiff's motion and entered an order converting the case to Chapter 7 on September 26, 2023. Case No. 23-10885-CMA, ECF No. 128.

On October 11, 2023, the Defendants filed post conversion schedules ("Chapter 7 Schedules") and statement of financial affairs ("Chapter 7 SOFA"). Case No. 23-10885-CMA, ECF Nos. 138 and 139. The Defendants provided the exact same information and answers as provided in their Chapter 11 Schedules and SOFA. The Chapter 7 Trustee held the initial meeting of creditors (the "Chapter 7 Creditors Meeting"), and the Defendants again testified he/she read and signed the Initial Bankruptcy Documents, the information provided is true and correct, and all assets and debts are listed. PTO ¶ 42. On December 22, 2023, the Plaintiff filed this adversary complaint against the Defendants. ECF No. 1.

### D. The Defendants Disclose Contributions Made to their Entities in their Chapter 11 and Chapter 7 Statement of Financial Affairs.

At paragraph 18 of their Chapter 11 and Chapter 7 SOFAs, the Defendants described net proceeds received from the sale of real property at 9104 SE 50th St. Mercer Island, WA and list contributions of $1,466,000 to Barcelo, $312,000 to Columbia City, $1,646,500 to Caesars, and $297,129 to Rise Flats. Case No. 23-10885-CMA, ECF Nos. 21 and 139. The Defendants also described net proceeds received from the sale of real property at 3818 S. 326th St. Federal Way, WA and list contributions of $205,000 to Barcelo and $100,000 to Columbia City. *Id.*

At trial, the Plaintiff argued the Defendants made these transfers in violation of the charging order and without notice. Since the charging order created a lien against all the Defendants' financial interests in their entities, the transfers did not put any property out of Plaintiff's reach.

### E. The Defendants Falsely Describe Their Interest in Real Property.

On their Chapter 11 SOFAs and Chapter 7 SOFAs, the Defendants disclosed a transfer of the Mercer Island Property to Bryan and Alyssa Graf (the "Grafs") in December 2022 for $2,200,000. Case No. 23-10885-CMA, ECF Nos. 21 and 139. They provided the following description of the property transferred: "The property was purchased by Radimir and Ella Mandzyuk, they did not qualify for loan. Debtors co-signed on purchase loan and were put on title. Mandzyuk sold property in 2022 and purchased new property. Debtors did not contribute to loan payments or other expenses of the property."[2] *Id.*

Ella Mandzyuk is the daughter of the Defendants and is married to Radimir Mandzyuk. The Defendants testified Radimir and Ella wanted to move from California to Washington to be closer to them, the Defendants found the Mercer Island Property down the street from them, and the Defendants agreed to co-sign the loan.

The entire description of the transfer in the SOFAs is false and misleading. First, Mr. Mandzyuk testified neither he nor his wife contributed to the down payment. On the stand, Ms. Maksimchuk conceded the Defendants actually made the down payment on the property.

Second, the statement "Mandzyuk sold property in 2022 and purchased new property" falsely implies the Mandzyuks used the proceeds from the sale of the Mercer Island Property to purchase a new home. This statement comports with the narrative presented in Mr. Tracy's pre-

---

[2] Statement of Financial Affairs question 18 requires debtors to list all transfers made within two years before the filing date, other than property transferred in the ordinary course of business.

petition email which plainly stated the Mandzyuks used the proceeds to purchase a new home. This statement was false. At trial, the Defendants admitted they received *all* net proceeds from the sale of the Mercer Island Property which amounted to $721,484.83.[3] Therefore, the Mandzyuks received none of the Mercer Island Property sale proceeds and did not use of those monies to buy new property.

The statement, "Debtors did not contribute to loan payments or other expenses of the property," is also false and misleading. It is undisputed the Defendants made all mortgage payments for the Mercer Island Property from the date of purchase until it was sold in December 2022. PTO ¶ 54.

On January 31, 2025, just days before the trial in this matter began, the Defendants filed an amended Chapter 7 SOFA. Case No. 23-10885-CMA, ECF No. 279. They now include the following new description of the Mercer Island Property transferred to the Grafs: "Real Property located at 4719 90th Ave, SE, Mercer Island. The property was jointly owned by Bogdan Maksimchuk, Ella Mandzyuk, Radimir Madzyuk and Aleksander Deysena. Mandzyuk sold property in 2022." *Id.* This new description no longer states a) only Ella and Radimir purchased the property, b) the Mandzyuks sold the property, or c) the Debtors made no loan payments. In the column that requires a description of any property or payments received or debts paid in exchange, the Defendants also include this brand new language:

> "$2,200,0000 [sic]. In March 2022, the debtors granted TBG Capital, LLC a second deed of trust against the property to secure a $536,000 loan that were contributed $75,000 to Barcelo Homes, LLC, $200,000 to Caesars Luxury Apartments, LLC and $45,000 to Columbia City Living. From closing, Debtors received $721,000 net proceeds: Debtors contributed $150,000 to Barcelo Homes; $160,000 to

---

[3]  Washington is a community property state, and property acquired during the marriage is presumed to be community property. RCW § 26.16.030; *Seizer v. Sessions*, 132 Wash.2d 642, 653, 940 P.2d 261, 266 (Wash. 1997).

Columbia City Living, $14,000 to Veromanagement LLC and $250,000 to 308 Tacoma LLC for interest payments on Caesar."

*Id.*

In addition, the Defendants disclose on the new SOFA a new transfer they made to Radimir and Ella Mandzyuk: "Debtors transferred $102,000, by wire transfer, to Homestreet Bank as down payment for the purchased [sic] of property by Ridimir [sic] and Ella Mandzyuk at 12426 25th St. E, Edgewood, WA." *Id.* In the column that requires a description of any property or payments received or debts paid in exchange, the Defendants explain: "Payment was reimbursement for Mandzyuk's renovation and remodel expenses on 4719 90th Ave SE, Mercer Island WA." *Id.* This new SOFA amended on the eve of trial confirms the Mandzyuks did not contribute to loan payments towards the Mercer Island Property or use the sale proceeds to purchase new property, directly contradicting the Defendants sworn statement in their prior SOFAs.

As further proof the Defendants intended to mislead with their false statements about the Mercer Island Property, they provided to the Plaintiff an altered closing statement on the sale of the property. During discovery, the Defendants produced a closing statement for the Mercer Island Property sale to the Grafs. Ex. P66. The Plaintiff also obtained a copy of the closing statement from the escrow agent. Ex. P69. This latter statement includes a line on the second page: "100% Sale Proceeds to Bogdan Maksimchuk." *Id.* The statement produced by the Defendants, however, is plainly altered: the line stating the distribution of the proceeds is covered up.

After the Defendants received the $721,484.83 net proceeds from the sale of the Mercer Island Property the Defendants made the following transfers to their entities:

- $150,000 to Barcelo on January 15, 2023.

Memorandum Decision and Order - 8

- $100,000 to Columbia City on January 15, 2023.

- $250,000 to 308 Tacoma, LLC via Cashier's Check on February 2, 2023, and deposited in Caesars' account.

- $14,000 to Veromanagement on February 10, 2023.

- $100,000 to Barcelo on February 10, 2023.

- $60,000 to Columbia City on February 21, 2023.

PTO ¶ 60, Ex. P73-74.[4]

Again, the Defendants omitted these transfers from their Chapter 11 and Chapter 7 SOFAs but did include the transfers in their recently amended Chapter 7 SOFA. Case No. 23-10885-CMA, ECF No. 279.

Finally, the Defendants failed to disclose in any of the SOFAs that they lived at the Mercer Island Property for a period of time after the Mandzyuks moved out until they sold it in December 2022. The Defendants argued the omission is immaterial. The Court disagrees. The failure to include the Mercer Island Property on the list of places they lived further confirms the Defendants' fraudulent intent to conceal their interest in the home.

**F. The Defendants Received Distributions From their Entities Pre and Post-Petition.**

It is undisputed that the Defendants received the following transfer from their entities:

- $25,000 from Columbia City on March 11, 2023.

- $15,748 from Rise Flats on April 7, 2023.

- $999,815.39 from net sale proceeds of Caesar's Luxury Apartments' closing between April 15, 2023, and May 15, 2023.

- $17,774.62 from Rise Flats on June 6, 2023.

---

[4] Transfers were made from Defendants' joint bank account at Umpqua Bank.

- $23,362.13 from Rise Flats on July 13, 2023.

- $3,975.99 from Rise Flats on July 19, 2023.

PTO ¶ 82, 85, and 89.

The Plaintiff argued that these transfers violated the charging order against the Defendants. While that may be true, these transfers consisted of property of the Defendants' entities not of the Defendants.

### G. Ms. Maksimchuk Spent Estate Funds on Personal Expenses Months After the Court Converted the Case to Chapter 7.

As noted above, the Defendants own 50% of the membership interests of Rise Flats. On November 28, 2023, two months after the Court converted the case to Chapter 7, Ms. Maksimchuk withdrew $10,000 from the account of Rise Flats. She testified she needed the funds to pay for emergency dental services which she obtained in Mexico.

She neither sought nor obtained permission from the Court or the Chapter 7 trustee. Ms. Maksimchuk testified that although she knew she should not have transferred property from the estate, she claimed she made an agreement with Rise Flats management to repay the amount back by providing services in return. Any such agreement is of no consequence because she failed to obtain an agreement with the Chapter 7 trustee and Court approval. Ms. Maksimchuk eventually repaid the $10,000 to the trustee but not until a few weeks before trial.

### II. CONCLUSIONS OF LAW

### A. Jurisdiction and Authority.

This Court has jurisdiction by virtue of 28 U.S.C. §1334(b). This matter is a core proceeding described by 28 U.S.C. §157(b)(2)(J). All parties affirmatively consented to this Court entering final orders and judgments. ECF Nos. 6 and 11.

**B.     The Plaintiff Has Not Proven the Defendants Transferred, Removed, Destroyed or Concealed Property Within One Year of the Petition Date.**

Section 727(a)(2)(A)[5] provides for denial of discharge if the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed property of the debtor, within one year before the date of the filing of the petition. The party seeking to deny a debtor's discharge under Section 727(a)(2) must prove two things: "(1) a disposition of property, such as transfer or concealment, and (2) a subjective intent on the debtor's part to hinder, delay or defraud a creditor through the act [of] disposing of the property." *Retz v. Samson* (*In re Retz*), 606 F.3d 1189, 1200 (9th Cir. 2010) (citing *In re Lawson*, 122 F.3d 1237, 1240 (9th Cir. 1997)). A "transfer" is defined as "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with (i) property; or (ii) an interest in property." 11 U.S.C. § 101(54)(D).

The party objecting to a debtor's discharge must establish its case by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291 (1991). Section 727(a)(2) requires a subjective intent on the debtor's part to hinder, delay or defraud a creditor. "Denial of discharge, however, need not rest on a finding of intent to *defraud*. Intent to hinder or delay is sufficient." *Bernard v. Sheaffer (In re Bernard)*, 96 F.3d 1279, 1281 (9th Cir. 1996) (emphasis in original); *In re Ereren*, 2013 WL 2321917, at *4 (B.A.P. 9th Cir. May 28, 2013) ("[A] finding of intent to hinder or delay or defraud is sufficient to deny discharge under § 727(a)(2)."). Intent "may be established by circumstantial evidence, or by inferences drawn from a course of conduct." *First Beverly Bank v. Adeeb (In re Adeeb)*, 787 F.2d 1339, 1343 (9th Cir. 1986).

---

[5] Unless stated otherwise, all "Section" citations refer to Title 11 of the U.S. Code.

In the context of § 727(a)(2), certain "badges of fraud" may suggest that a debtor intended to defraud creditors with a transfer of property:

> (1) a close relationship between the transferor and the transferee; (2) that the transfer was in anticipation of a pending suit; (3) that the transferor Debtor was insolvent or in poor financial condition at the time; (4) that all or substantially all of the Debtor's property was transferred; (5) that the transfer so completely depleted the Debtor's assets that the creditor has been hindered or delayed in recovering any part of the judgment; and (6) that the Debtor received inadequate consideration for the transfer.

*In re Retz*, 606 F.3d at 1200 (quoting *Emmett Valley Assocs. v. Woodfield (In re Woodfield)*, 978 F.2d 516, 518 (9th Cir.1992)). Each "badge" does not have to be present for a court to find that a debtor acted with requisite intent under § 727(a)(2). *See In re Woodfield*, 978 F.2d at 518.

At trial, the Defendants admitted to transfers made within one year of the petition date to their entities. The Court does not find the Defendants intended to hinder, delay, or defraud the Plaintiff because the Plaintiff held a charging order lien against the Defendants' interest in all their entities meaning the transfers did not put the property out of Plaintiff's reach.

The Defendants also confirmed at trial transfers were made by their entities within one year before the petition date. The Court finds the transfers were made by the Defendants' entities, not by the Defendants. The Court concludes the Plaintiff did not present sufficient evidence that the Defendants, with intent to hinder, delay, or defraud a creditor or an officer of the estate, transferred, removed, destroyed, mutilated, or concealed their property within one year before the petition date and will not deny them a discharge under § 727(a)(2)(A).

### D. Ms. Maksimchuk Transferred Estate Property Post-Petition.

Section 727(a)(2)(B) provides for the denial of discharge if the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate, has transferred, removed, destroyed,

mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed property of the estate, after the date of the filing of the petition.

As the Court noted above, the Defendants own 50% of Rise Flats. Property of the estate includes all legal or equitable interests of the debtor in property, wherever located or by whomever held, as of the commencement of the case. 11 U.S.C. §541(a)(1). Under Section 541, once the estate is created, no interests in property of the estate remain in the debtor. Therefore, the Defendants' membership interests—and all rights to distributions on those interests—in Rise Flats constitute property of the estate.

In a Chapter 7, the debtor's estate is administered by a trustee appointed by the United States Trustee. 11 U.S.C. § 701. Ms. Maksimchuk made no efforts to notify the Chapter 7 trustee or the Court of the $10,000 she took from Rise Flats post-petition. Therefore, Ms. Maksimchuk's transfer and concealment of the proceeds after the date of the filing of the petition constitute grounds for denial of discharge under 11 U.S.C. § 727(a)(2)(B).

The Plaintiff did not present evidence Mr. Maksimchuk, with intent to hinder, delay, or defraud an officer or a creditor of the estate, transferred, removed, destroyed, mutilated, or concealed, or has permitted the same, property after the date of the filing of the petition. The Court will not deny Mr. Maksimchuk a discharge under 11 U.S.C. § 727(a)(2)(B).

**E.    The Defendants Kept Adequate Records.**

The Bankruptcy Code provides for the denial of discharge if the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all the circumstances of the case.  11 U.S.C. §727(a)(3). The purpose of Section 727(a)(3) "is to make

discharge dependent on the debtor's true presentation of [the debtor's] financial affairs." *In re Caneva*, 550 F.3d 755, 761 (9th Cir. 2008). The subsection "strikes a balance, where the focus is on the kind of recordkeeping that would allow a bankruptcy court to conduct a fair and expedient distribution of a debtor's assets." *Berger & Assocs. Attorneys, P.C. v. Kran (In re Kran)*, 493 B.R. 398, 404 (Bankr. S.D.N.Y. 2013) *aff'd*, 760 F.3d 206 (2d Cir. 2014).

To meet its burden under Section 727(a)(3), the Plaintiff must offer evidence that "(1) that the debtor failed to maintain and preserve adequate records, and (2) that such failure makes it impossible to ascertain the debtor's financial condition and material business transactions." *Caneva*, 550 F.3d at 761 (citation omitted). After the Plaintiff shows "inadequate or nonexistent records, the burden of proof then shifts to the debtor to justify the inadequacy or nonexistence of the records." *Id*. (citation omitted).

When a debtor is sophisticated and carries on a business involving substantial assets, "creditors have an expectation of greater and better record keeping." *Id*. at 762 (quoting *Peterson v. Scott (In re Scott)*, 172 F.3d 959, 970 (7th Cir.1999)). Bankruptcy courts have broad discretion "in determining whether a debtor's records are sufficient under § 727(a)(3)." *Gray v. Jackson (In re Jackson)*, 453 B.R. 789, 796 (Bankr. E.D. Pa. 2011).

The Plaintiff did not present sufficient evidence that the Defendants concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information. Although the Defendants provided the Plaintiff with an altered copy of the Mercer Island Property closing statement, the Court was able to determine the Defendants' financial condition through bank statements. The bank statements reveal the Defendants' deposits, withdrawals, and daily balances. The Court does not need records from the Defendants' entities to ascertain the Defendants' financial condition. The Court will not deny Defendants a discharge under Section 727(a)(3).

Memorandum Decision and Order - 14

### F. The Defendants Made False Oaths.

The Bankruptcy Code provides for the denial of discharge if the debtor knowingly and fraudulently made a false oath or account in or in connection with the case. 11 U.S.C. § 727(a)(4). The purpose of Section 727(a)(4)(A) "'is to ensure that dependable information is supplied to those interested in the administration of the bankruptcy estate so that they can rely upon it without the need for the trustee or other interested parties to dig out these true facts in examination or investigations;' the opportunity to obtain a fresh start is thus conditioned upon truthful disclosure." *In re Aubrey*, 111 B.R. 268, 274 (B.A.P. 9th Cir. 1990) (quoting *In re Martin*, 88 B.R. 319, 323 (D. Colo. 1988)). "A false statement or an omission in the debtor's bankruptcy schedules or statement of financial affairs can constitute a false oath." *Khalil v. Developers Sur. & Indem. Co. (In re Khalil)*, 379 B.R. 163, 172 (B.A.P. 9th Cir. 2007), *aff'd*, 578 F.3d 1167 (9th Cir. 2009). The Plaintiff must show that "(1) the debtor[s] made a false oath in connection with the case; (2) the oath related to a material fact; (3) the oath was made knowingly; and (4) the oath was made fraudulently." *In re Retz*, 606 F.3d at 1197.

A debtor's false oath may involve an affirmatively false statement or an omission. *Fogal Legware of Switzerland, Inc. v. Wills (In re Wills)*, 243 B.R. 58, 62 (B.A.P. 9th Cir. 1999). "A false oath is complete when made." *Searles v. Riley (In re Searles)*, 317 B.R. 368, 377 (B.A.P. 9th Cir. 2004). A prompt correction, or lack thereof, may be probative of fraudulent intent. *Id*. The disclosure of secreted assets at or before the meeting of creditors, or after thorough amendments, does not insulate a debtor from a finding of fraudulent intent with respect to false oaths in the debtor's original bankruptcy documents. *AutoSource Capital, Inc. v. Traina (In re Traina)*, 501 B.R. 379, 384 (Bankr. N.D. Cal. 2013). "Moreover, failing to rectify inconsistencies and omissions when filing amended schedules may be weighed in favor of finding the requisite

intent to deceive." *Id*. at 386. Amending bankruptcy schedules to disclose material facts after those facts come out at a meeting of creditors does not preclude denial of discharge: "foxhole conversions are not necessarily convincing, and disclosures made after a debtor realizes exposure is imminent do not absolve fraud." *Hansen v. Moore (In re Hansen)*, 368 B.R. 868, 877 (B.A.P. 9th Cir. 2007).

Courts define materiality broadly. A false statement "is 'material' if it bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of the debtor's property." *In re Khalil*, 379 B.R. at 173. "A false statement or omission may be material even if it does not cause direct financial prejudice to creditors." *In re Wills*, 243 B.R. at 63. An omission or misstatement that "detrimentally affects administration of the estate" is material even where it involves an asset with little value or that was not property of the estate. *Id*. at 63–64. The Court need not find impact on the estate or administration of the estate for a false statement or omission to be material. *In re Kluge*, 2013 WL 1459274, at *5 (B.A.P. 9th Cir. 2013).

"A debtor acts knowingly if he or she acts deliberately and consciously." *In re Retz*, 606 F.3d at 1198. A debtor's fraudulent intent is usually proven by circumstantial evidence or by inferences drawn from the debtor's conduct. *Id*. at 1199. An oath or omission is fraudulently made when the debtor makes a misrepresentation or an omission that at the time the debtor knew was false with the intention and purpose of deceiving creditors. *In re Khalil*, 379 B.R. at 173. In considering whether the requisite intent is present, the court can consider if there has been a pattern of falsity or a debtor's reckless indifference to or disregard of the truth. *In re Retz*, 606 F.3d at 1198–99.

Debtors have an absolute duty to report all assets "even if they believe their assets are worthless or are unavailable to the bankruptcy estate." *Robin Singh Educ. Servs. v. McCarthy (In re McCarthy)*, 488 B.R. 814, 828 (B.A.P. 1st Cir. 2013) (citation omitted)); *Home Service Oil Co. v. Cecil (In re Cecil)*, 542 B.R. 447, 454 (B.A.P. 8th Cir. 2015) ("[D]ebtors are not free to pick and choose what to disclose, and what not to disclose."). "There is no de minimus exception to the Bankruptcy Code's disclosure requirements." *Dean v. McDow*, 299 B.R. 133, 140 (E.D. Va. 2003). Debtors have a duty to disclose all assets and liabilities, no matter their size or value. 11 U.S.C. § 521(a); *see Hatton v. Spencer (In re Hatton)*, 204 B.R. 477, 485 (E.D. Va. 1997).

The Defendants deliberately made false statements on their Chapter 11 and Chapter 7 SOFAs. As noted above, the Defendants knowingly made multiple false representations regarding their interest in the Mercer Island Property at paragraph 18 of their SOFAs. At trial, Ms. Maksimchuk admitted the Defendants made the down payment and mortgage payments on the property until it was sold December 19, 2022. And there is no dispute that Mr. Maksimchuk received all of the sale proceeds. So, each Defendant had the requisite knowledge that the statements in their SOFAs were materially false.

The altered closing statement that attempted to disguise Mr. Maksimchuk's receipt of the sale proceeds coupled with the Defendants' bank statements showing receipt of the sale proceeds further proves Defendants knew they submitted false statements in the SOFAs. The Defendants also knew the statements were false because they spent all the money after receiving the sale proceeds. The Defendants failure to disclose in their SOFAs that they resided at the Mercer Island Property further proves their fraudulent intent to conceal their interest.

It bears repeating that their bankruptcy counsel also represented to the Plaintiff that the Mandzyuks received the sale proceeds. All of this evidence reveals a pattern of falsity with respect to the property and a fraudulent intent to deceive the Plaintiff in particular and creditors in general.

In closing arguments, Defendants' counsel suggested that their bankruptcy attorney, Mr. Tracy, bore responsibility for the false statements in the SOFAs. The Court notes the Defendants stipulated that they would not assert the advice of counsel defense. PTO Sec. III. The Court therefore rejects any defense based on the actions of the Defendants' attorney.

The Court concludes the Defendants intended to conceal their interest in the Mercer Island Property by misstating the facts and omitting material information required by the SOFAs. The Court finds and concludes that each Defendant knowingly made false statements and material omissions of their interests with fraudulent intent to deceive their creditors and the Court, and their discharge must be denied under §727(a)(4).

### F.    The Plaintiff Has Not Proven the Defendants Failed to Explain the Loss of Assets.

The Bankruptcy Code provides for the denial of discharge if the debtor has failed to explain satisfactorily any loss of assets or deficiency of assets to meet the debtor's liabilities. 11 U.S.C. § 727(a)(5). The Plaintiff must show that "(1) debtor at one time, not too remote from the bankruptcy petition date, owned identifiable assets; (2) on the date the bankruptcy petition was filed or order of relief granted, the debtor no longer owned the assets; and (3) the bankruptcy pleadings or statement of affairs do not reflect an adequate explanation for the disposition of the assets." *In re Retz*, 606 F.3d at 1205. (citation omitted). Once the Plaintiff satisfies its burden of proof, the burden then shifts to the Defendants to satisfactorily explain the loss or deficiency of assets. *Minsky v. Silverstein (In re Silverstein)*, 151 B.R. 657, 663 (Bankr. E.D.N.Y. 1993). A "debtor's failure to offer a satisfactory explanation when called on by the court is a sufficient

ground for denial of discharge under 727(a)(5)." *Devers v. Bank of Sheridan (In re Devers)*, 759 F.2d 751, 754 (9th Cir. 1985).

There is insufficient evidence to prove the Defendants have failed to explain any loss of assets or deficiency of assets to meet their liabilities. While the Defendants did not include transfers made to their entities in their Chapter 11 or Chapter 7 SOFAs, at trial the Defendants explained the transfers were made to invest in their entities. The assets transferred to the entities are still identifiable and within the Plaintiff's reach. Any transfer made by the Defendants' entities to other parties is not relevant because the entities are not a party to this adversary proceeding.

The Plaintiff did not present sufficient evidence that the Defendants failed to explain satisfactorily any loss of assets or deficiency of assets to meet the Defendants' liabilities. Therefore, the Court will not deny the Defendants a discharge under § 727(a)(5).

### H. The Plaintiff Has Not Proven That the Defendants Willfully and Maliciously Injured the Plaintiff.

The Bankruptcy Code does not discharge an individual debtor from any debt for willful and malicious injury by the debtor to another entity or to the property of another entity. 11 U.S.C. § 523(a)(6). The determination of a "willful and malicious" injury requires a two-step analysis. *Khaligh v. Hadaegh (In re Khaligh),* 338 B.R. 817, 831 (9th Cir. BAP 2006). The first step of the § 523(a)(6) inquiry is whether there was a "willful" injury, which "triggers in the lawyer's mind the category 'intentional torts,' as distinguished from negligent or reckless torts." *Kawaauhau v. Geiger*, 523 U.S. 57, 61-62 (1998). A willful injury is deliberate, and it is "one which, in fact, targets a particular individual for harm and in so doing, injures him." *Blandino v. Bradshaw (In re Bradshaw)*, 315 B.R. 875, 886 (Bankr. D. Nev. 2004). Thus, the willfulness test is subjective: "[Section] 523(a)(6)'s willful injury requirement is met only when the debtor has a subjective

motive to inflict injury or when the debtor believes that injury is substantially certain to result from his own conduct." *Carrillo v. Su (In re Su)*, 290 F.3d 1140, 1142 (9th Cir. 2002).

The second step of the § 523(a)(6) inquiry is whether the conduct was "malicious." *Khaligh*, 338 B.R. at 831. The relevant test for "malicious" conduct is: (1) a wrongful act; (2) done intentionally; (3) which necessarily causes injury; and (4) which is done without just cause and excuse. *Jett v. Sicroff (In re Sicroff),* 401 F.3d 1101, 1106 (9th Cir. 2005) (as amended). It can be inferred that a "willful" injury meets these requirements; in particular, "evidence in the record of specific intent to injure" negates just cause or excuse. *Khaligh*, 338 B.R. at 831. A debt arising from the unlawful conversion of the property of another is not specified as nondischargeable in section 532(a) because "willful and malicious injury" convers a "willful and malicious conversion." 124 Cong. Rec. H11,095–11,096 (daily ed. Sept. 28, 1978), reprinted in App. Pt. 4(f)(iii) infra; S17, 412–13 (daily ed. Oct. 6, 1978), reprinted in App. Pt. 4(f)(iii) infra.

The Plaintiff fails to provide sufficient evidence to prove the Defendants had the subjective motive to willfully and maliciously injure the Plaintiff. The Plaintiff argued the Defendants injured the Plaintiff by making transfers to and from their entities in violation of the charging order. As noted above, the Defendants did not place the property out of the Plaintiff's reach. There is insufficient evidence to prove the Defendants willfully and maliciously injured the Plaintiff. Therefore, the Court will not deny the Defendants' discharge under § 523(a)(6).

### III. <u>ORDER</u>

For the reasons stated above, it is hereby,

ORDERED the Plaintiff is entitled to a judgment denying Mr. Maksimchuk's discharge under 11 U.S.C. §§ 727(a)(4)(A) and Ms. Maksimchuk's discharge under 11 U.S.C. §§ 727(a)(2)(B) and (a)(4)(A) and the Defendants are entitled to a judgment dismissing the

remainder of the Plaintiff's claims. The Court will enter a separate judgment, pursuant to Federal Rule of Bankruptcy Procedure 7058 and Federal Rule of Civil Procedure 58, consistent with this Memorandum Decision and Order.

/// END OF MEMORANDUM DECISION AND ORDER ///